**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**LOUIS E. HOPKINS, A/K/A "LOU",**

**Defendant.**                                        **No. 08-CR-30225-DRH**


**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

   Pursuant to the declaration during the sentencing hearing of October 16, 2009, the Court issues this Order setting forth Louis E. Hopkins' sentence and the rationale for that sentence.

**LEGAL STANDARD**

   The sentencing landscape has changed considerably since the landmark case of *United States v. Booker*, **543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 621 (2005).** Gone are the days when the sentencing court merely applies the sentencing guideline to a case, explaining to the Defendant that his hands are, for all practical purposes, tied. That, within some range, his sentence is predetermined once the variables of his offense conduct, acceptance of responsibility and criminal history are plugged into the formula. It is further clear now that the Supreme Court has given us *Rita v. United States*, **551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)** and *Gall v. United States*, **552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445**

**(2007)** that the proper procedure, as a starting point and initial benchmark, is for the sentencing court to correctly calculate the sentencing range as determined by the Guidelines.  Each party is to be given an opportunity to argue for whatever sentence he or she deems appropriate in the case.  Thereafter, the district judge is to consider all of the section 3553(a) factors, without giving a presumption of reasonableness to the Guidelines.  An individualized assessment of the factors as weighed against the facts in the case must be made.  According to the nation's highest court:  "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." ***Gall*, 128 S.Ct. at 597.**

### CRIMES OF CONVICTION
### STATUTORY MAXIMUM
### GUIDELINE RANGE

Hopkins has been convicted in Count 1 of unlawful possession by a previously convicted felon which is a Class C Felony that has a statutory range of not more than ten years in prison, a maximum fine of $250,000 and a special assessment of $100.  He also has been convicted in Counts 2-4 of distribution of Cocaine Base which are Class B Felonies that have a statutory range of not more than thirty years in prison, a maximum fine of $2,000,000 and a special assessment of $100 per count.  Further, he has been convicted in Counts 5-6 of Tampering With a Witness which are Class C Felonies that have a statutory range of not more than

twenty years in prison, a maximum fine of $250,000 and a special assessment of $100 per count.  Based on Hopkins' total offense level of 22 and a criminal history of category of II, the guideline range is 46 to 57 months in prison to run concurrently, a fine range of $7,500 to $6,000,000 and a special assessment of $600.

### 18 U.S.C. § 3553(a) FACTORS

In sentencing Hopkins, the Court considers the following relevant factors outlined in **18 U.S.C. § 3553(a)**: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence to criminal conduct; (5) the need to protect the public from further crimes of the defendant;(6) the need to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; (7) the need to consider restitution; (8) the need to consider the kinds of sentences available, as well as the sentencing range established for the applicable category of offenses committed by the applicable category of defendant set forth in the sentencing guidelines, in effect, including amendments yet to be implemented as called for by Congress; (9) consider any policy statements the Sentencing Commission has in place or about to be in place; and (10) the need to avoid unwarranted sentencing disparities among defendants everywhere with similar records who have been found guilty of similar conduct.

## SENTENCE IMPOSED

The Court determines that Defendant should serve **9 years, (108 months)** in prison for his crimes: 48 months in prison on Count 1; 24 months in prison on Counts 2, 3 and 4 to run concurrent to each other and to run consecutively to Count 1; and 36 months in prison on Counts 5 and 6 to run concurrent to each other and to run consecutively to Counts 1, 2, 3 and 4.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

Unlike what defense counsel suggests, this is not a simple felon in possession case, it is clear to the Court that Hopkins is a habitual criminal that was convicted of three very serious offenses – the unlawful possession of three firearms by a previously convicted felon, three counts of distribution of crack cocaine and two counts of witness tampering.  Moreover, Hopkins distributed crack cocaine from his residence where the three guns were found.

Despite his indictment, drug offenses and being a felon in possession, Hopkins compounded his criminality while incarcerated.  In recorded conversations with his then-wife LaShonda Campbell, and others, the Defendant tried to elicit false statements by telling his wife, relatives, and neighbors and to lie to the police about where he lived.  He even prepared a false affidavit for Campbell to sign.  The affidavit would have had Campbell claiming ownership of the guns and powder cocaine found in the master bedroom.  Hopkins wanted Campbell to take responsibility for the guns because she was not a convicted felon and he knew he was facing a lengthy

sentence if convicted.  Although the Court would not let the jury speculate on this subject, there is a dispute about whether the Defendant ordered an armed car jacking and death threats by his nephews.  Defendant was in jail and the Court had cut off his contact with the outside world.  The Court did so for cause and given Defendant's history – he clearly could have given the instruction prior to the Court's Order and this Court so finds by a preponderance of the evidence.

The Court pointed out in its discussion of the grouping of the three different types of offenses that the guideline advice emasculated the witness tampering crime and failed entirely to account for the crack cocaine offense.  In the judgment of this Court, the guidelines , in this case, lead to an anomaly.  The **Kimbrough** case, decided by the United States Supreme Court, certainly established that, in light of the advisory nature of the guidelines, that the trial court can disagree with guideline treatment of a cases individual circumstances.  A judge is to look at the case individually, its unique characteristics, in deciding  upon the just and reasonable sentence.  The grouping guidelines in this case, advise the Court to impose no punishment for the dealing of crack cocaine and to impose more punishment for possessing a firearm with an obliterated serial number than the crime of tampering with a witness.  The punishment that is advised for the two counts of tampering a witness, described very briefly above, and which took up considerable trial time, including testimony that the jury could well have concluded that Ms. Campbell did and clearly is now and in the future will fear for her life, an elaborate scheme to say the least, is no more punishment than if the Defendant

committed simple perjury by lying on the stand at trial or in a sentencing hearing to persuade the jury or judge on a single issue of fact.

The trial in this case and the record as memorialized by the presentence report clearly demonstrate a serious crime committed by this Defendant.   The Defendant made it quite plain that he fully intended to carry a gun at all times and did not care that it was against the law for him to do so.   That he was a convicted felon and was risking arrest and conviction was a price he was willing to pay for his overriding interest in caring and keeping guns.  He preferred a gun to carry that did not eject shells and arranged for such a gun from his son.  While carrying guns, he sold crack cocaine in a community already devastated by that poison.

He then went on to commit a third and separate crime of tampering with a federal witness.   The jury found that he attempted to coerce his then-wife to provide false evidence on the ownership of the guns and to hide from the authorities. Later death threats against her and her family members were conveyed to try to make believers out of them to keep them from cooperating.  Because the guidelines treat obstruction in a very generic way, they really cannot take into account the many deviations in fact issues that exist between cases. The case of tampering at bar is extreme and could only be exceeded if someone was actually injured or killed.  Given the facts of this case, the advice from the commission hardly seems to fit those facts.

**THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

As argued in the Government's memorandum, the Defendant's criminal behavior has escalated since his first conviction, which was a theft conviction at age

18.  His next four convictions all involved firearms, one of which endangered the life of a State Trooper when the Defendant discharged a weapon.  His convictions include drug charges and at the age of 44 an aggravated unlawful use of a weapon conviction, negotiated down from an armed robbery and two counts of aggravated unlawful use of a weapon.  The case involved Hopkins holding a weapon on a victim as Hopkins' son robbed and beat the victim. The key for the Court's consideration, however, is that it is a firearm conviction and that there was a victim, that it was firearm crime in the presence of a person.

Mr. Holmes points out that the vast majority of the Defendant's convictions do not count for purposes of criminal history points.  He notes that this is because they are too old and argues the point in Mr. Hopkins favor.  However, the Court would note that once again, the guideline advice, in this area, does not reflect accurately the real state of affairs of the case at bar.  The Defendant's propensity for criminality is much greater than a single point score, even if you add the two additional points for the offense taking place while the Defendant was on probation.  Criminal history category II is not the whole story for this Defendant who is a habitual criminal, self-described as he tells his wife he will always carry a gun and sells crack out of his residence.

There is strong circumstantial evidence that Defendant committed a murder that rises to the level of a preponderance of the evidence.  Given the totality of the Court's rationale it makes no difference in the Court's sentence but certainly confirms the Court's conclusion that Hopkins is a habitual criminal.  While, the

Court does not accept all the evidence presented by the Government regarding the Defendants' history and characteristics – unless the Court specifically discussed it herein – because much of it is too speculative it is clear that the Defendant lives a life of crime, violence, intimidation, firearms and is a clear danger to society.

**SERIOUSNESS OF THE OFFENSE, RESPECT FOR THE LAW, JUST PUNISHMENT**

This Defendant had multiple guns even though he was prohibited from legally doing so. Separately, Hopkins sold crack cocaine.  If the Court were sentencing this Defendant individually on a crack sentence according to the crack guideline, the Court would find no reason to eliminate the disparity between crack and powder.  The Defendant's overall criminality does not lend itself to such a reduction, or alternatively, would suggest the disparity should be resolved by bringing the powder penalties in line with the crack penalties to demonstrate to this Defendant that his habitual life of crime is not condoned.  Separately, the Defendant committed a very serious crime of tampering with a federal witness.  This even while incarcerated and included an attempt to coerce the use of a false affidavit by the witness and the use of death threats against the witness and her family.

Clearly, Hopkins does not have any respect for the law.  The sentence imposed by the Court must send a message that the only way to live within this society is to abide by the laws of the society and if one does not follow the laws an

appropriate penalty must be paid.  Moreover, a just punishment must be imposed.
In this case, the Court believes that consecutive sentences must be imposed because
of the separate nature of each of the crimes committed.  The guidelines do not take
into account adequately the unique nature of this case and the Defendant.  The Court
does not therefore find the advice of the guidelines to be of adequate assistance.

**ADEQUATE DETERRENCE TO CRIMINAL CONDUCT**

**PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT**

There is no need to repeat here the comments the Court has already
made about the Defendant's propensity for criminality and the habitual nature of his
criminal behavior and penchant for carrying guns despite the illegality of doing so.
Hopkins is a danger to society.  His crimes at bar demonstrate in a very graphic way
just how dangerous he is and can be.  These two factors, consequently, support the
conclusions drawn by the Court from the analysis for the other statutory factors.

When analyzing the sentence that is reasonable, the maximum statutory
sentence for Count 1 is ten years and 3 years supervised release.  For a habitual
criminal whose guideline range is 46 - 57 months, a statutory sentence of 4 years or
48 months and 3 years of supervised release the Court finds to be a just and
reasonable sentence.  The maximum statutory sentence for Counts 2, 3, and 4 is
thirty years, with at least 6 years supervised release.  The Court finds a 2 year or 24
month sentence to be a just and reasonable sentence to run concurrent with each

other but consecutively to Count 1.  This to be followed by 6 years of supervised release.  The maximum sentence for Counts 5 and 6 is 20 years, and 3 years of supervised release.  The Court finds a 3 year or 36 month sentence to by a just and reasonable sentence to run concurrent with each other but consecutively to Counts 1, 2, 3 and 4 with 3 years supervised release.  All terms of supervised release shall run concurrent.

If, for comparison, one were to analyze each crime individually from a guidelines standpoint.  The felon in possession (without the obstruction enhancement) would be a 20/II or a range of 37 - 46 months.  The crack case would be a 12/II or a range of 12 -18 months.  The obstruction case would be a 14/II or a range of 18 - 24 months.  Of course, as previously discussed the guideline would group the offenses together, emasculating the obstruction offense and lumping it with the felon in possession conviction, ignoring the crack conviction altogether, discounting, of course, any possibility of running the sentences consecutively.  So, on an individual basis once one gets past the variance for the consecutive sentencing, this sentence does not vary for the firearm conviction, is an increase variance by 6 months for the drug offense and is an increase variance of 12 months for the obstruction conviction.  As a nine year sentence, 108 months, it is an increase variance of 51 months above the highest range of the guideline range found by the probation officer, 6 months shy of a doubling of the high end sentence.  If the Court were to impose a guideline sentence in this case, it clearly would impose the high end of that guideline.

**THE KINDS OF SENTENCES AVAILABLE**

**THE SENTENCING RANGE SET FORTH IN THE SENTENCING GUIDELINES**

Clearly, there are no alternatives to incarceration available in light of the statutory prohibition to probation available in this case.  Naturally, even if probation was possible, it would be a true travesty of justice to hand down such a sentence.

Just as clearly, the Court has considered the guidelines and its analysis of the factors and whether a guideline sentence or a sentence which varies from the guideline range is contained throughout this order.  The rationale herein also makes very clear that much of the Defendant's history and characteristics are not covered by nor considered by the Guidelines.

Lastly, the balance of the particulars of the Court's sentencing Order shall be contained in the written judgment of the Court, which sets our the orders of the conditions of Defendant's supervision upon release from prison, the payment schedule of his financial obligations and the other details of the Court's verbal sentence.

**IT IS SO ORDERED.**

Signed this 16th day of October, 2009.

/s/     David R Herndon

**Chief Judge**
**United States District Court**